Under the present bankrupt law no such change was intended. On the contrary, the previous uniform system, under state laws of exemption, in the federal and state courts is continued, as it had been established under the act of congress of 1828, and under subsequent rules of the federal courts authorized by this act. In this respect, the bankrupt law merely provides that the state exemption laws, thus previously adopted, shall still apply, so as to exclude their subjects from the operation of the proceedings in bankruptcy. The law further enacts, in effect, that there may, in proper cases, be an additional exemption to be graduated with reference to the number, health, &c., of the bankrupt's family, to his condition in life, socially and otherwise, and to his former and recent, if not present, circumstances. Confusion of the views of the present question has arisen from hastily assuming that it is a question of the absolute unmeasured allowance of an additional exemption to the value of $500. The allowance is conditional, and is measured with reference not merely to value, but also to subjects, and their suitableness to personal requirements. The subjects must be necessaries and other articles which, in character, as well as in amount and value, are suitable to his family condition and circumstances. There may be cases, few perhaps in number, in which, though he may own property of a value considerably exceeding $300, it would sanction a fraud upon his creditors to allow him any part of the excess beyond it, except the specifically designated articles. For example, in a possible case, a debtor who never had owned property to the value of $300 beyond the amount of his debts, might become a bankrupt for the very purpose of depriving creditors of recourse to assets in excess of this value. Such an attempt should never be successful. In ordinary cases, the property excepted should not, however, be of less value than $200, in addition to the subjects of the state exemption laws to the value of $300, and the specifically designated articles. In special cases, the property additionally excepted may be of greater value; and, in some extraordinary cases, may be of the full value of $500, making the whole value, including $300 under the state laws, amount to $800, in addition to that of the wearing apparel and other specifically designated articles.

In the act of congress the articles newly excepted are mentioned first, and those previously exempted by state laws are mentioned lastly. The more natural order of considering the two subjects in Pennsylvania, if not elsewhere, is, perhaps, to invert this arrangement. Thus, the assignee should first consider what exemption is claimed under the laws of the state. As to the subjects of this claim of exemption, his only function is to see to their proper appraisement. In seeing to it, he should proceed as comformably to the laws of the state as may be possible.

These subjects of exemption, and the specifically designated articles, having been set apart, a more responsible duty is afterwards to be performed by him in designating the additional articles excepted under the act of congress.

In the present case, I infer that if the bankrupt is not to obtain a further exemption than has been allowed, neither he nor any other party objects to the selection of the articles which he has received. He was mistaken in demanding the additional amount as of absolute right, independently of consideration relative to his family condition and circumstances. On the other hand, the assignee was also mistaken if he supposed the act of congress to preclude him absolutely, under all circumstances, from allowing an exemption beyond the value of $500 in the whole. Whether this bankrupt ought to have received more than has been allowed I have no certain means of deciding from what is now before me. This must be determined by the assignee, whose report, if the bankrupt persists in his claim, will be made hereafter through the register.

RUTHERFORD (FISHER v.). See Case No. 4,823.

## Case No. 12,173.
### RUTHERFORD v. MOORE.
[1 Cranch, C. C. 388.] [1]

Circuit Court, District of Columbia. Dec. Term, 1806.

SLANDER—ACTIONABLE WORDS—AVERMENTS.

1. Actionable words spoken in the second person, will not support an averment of words spoken in the third person.

[Followed in Birch v. Simms, Case No. 1,427.]

2. The words "He gets his living by thieving," are actionable.

F. S. Key, moved for a new trial because the Court had admitted improper evidence; and in arrest of judgment because the words are not actionable. The words were, "He gets his living by thieving." It must be a specific charge of some crime or misdemeanor liable to punishment. A thief-catcher, an officer of justice, or a judge who gets fees, may be said to get his living by thieving; and he cited Onslow v. Horne, 3 Wils. 186; Holt v. Scholefield, 6 Term R. 691; Dawes v. Bolton, Cro. Eliz. 888; Baker v. Pierce, Ld. Raym. 959; and King v. Aylett, 1 Term R. 70.

Mr. Law, contrá. The doctrine of mitiori sensu is obsolete: the modern rule is that words shall be taken according to their common understanding and meaning. Beavor v. Hides, 2 Wils. 300.

The errors in arrest of judgment, were overruled. The motion for new trial was on the ground that the court erred in suffering words spoken in the second person, "you," &c., to

be given in evidence in support of the allegation that the defendant said "He gets," &c.; and Mr. Key cited Esp. N. P. 521. Mr. Law, contrá, cited Rex v. Pocock, Strange, 1157.

THE COURT granted a new trial on the ground of admitting the improper evidence.

Mr. Law, for plaintiff, moved to amend; which was allowed on payment of the costs of this term, except the jury fee.

[See Case No. 12,174.]

## Case No. 12,174.

### RUTHERFORD v. MOORE.

[1 Cranch, C. C. 404.] [1]

Circuit Court, District of Columbia. June Term. 1807.

WITNESS—COMPETENCY—HOW SHOWN.

Quære, whether a witness, who has declared his disbelief of a future state of rewards and punishments, is a competent witness. And whether such declarations can be given in evidence to the court, to prevent the witness from being sworn and examined.

Slander. The plaintiff offered J. A. as a witness.

F. S. Key for defendant, objected that the witness had declared his disbelief in a future state of rewards and punishments, and stated that he had witnesses ready to prove such declarations.

CRANCH; Chief Judge, stopped him, and doubted whether that mode of proceeding had ever been adopted in any court; and whether the fact, if proved, did not go rather to the credit than the competency of the witness.

THE COURT asked Mr. Key for authorities. He cited Esp. N. P.; and Peake, Ev. 90; Omychund v. Barker, 1 Atk. 21; 1 Wils. 84; Willes. 538.

THE COURT inclined to think that the only mode of proving the fact of belief has heretofore been by an examination of the witness himself, and that it ought to go rather to the credit. But Mr. Key waived the question as to the competency, and examined his witnesses as to the credibility.

[See Case No. 12,173.]

RUTHERFORD (UNITED STATES v.). See Case No. 16,210.

Ex parte RUTHERGLEN. See Case No. 9,-674.

## Case No. 12,175.

### RUTHERGLEN v. WOLF et al.

### Ex parte COHEN.

[1 Hughes, 78.] [2]

Circuit Court, E. D. Virginia. Nov.. 1876.

LIS PENDENS — RECORD — ACTION IN FEDERAL COURT.

The purchase of real estate in Virginia while a suit relating to it is pending in a court of the

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

United States is invalid as against the plaintiff in such suit, although the lis pendens be not recorded as required by Code Va. 1873, p. 1166, c. 182, § 5.

[Cited in U. S. v. Humphreys, Case No. 15,-422; Shufeldt v. Jenkins, 22 Fed. 370.]

In equity. On the eighth day of November, 1867, Samuel Wolf made a deed, in which his wife joined, conveying a lot of land and house in Petersburg, to Eli Kull, a brother-in-law; the property being alleged to have been worth about $2,000, and the purchase price set forth in the deed being $1,700. Eli Kull was one of the sons of Jacob Kull, and a member of the firm of Jacob Kull & Sons. Shortly after this, Wolf's stock of goods, worth some $6,000, was taken by process of distress issued by the said Jacob Kull & Sons, the principal part of which was disposed of under that process, but a part of the goods remained. On the 4th of January, 1868, Wolf made a trust deed for the benefit of his general creditors, conveying the remnant of his stock of goods and the furniture in his storehouse for that purpose. On the 22d of January, 1868, he filed his petition in bankruptcy in the United States district court for this district, and Andrew Rutherglen was appointed his assignee. On the 11th of February, 1869, the assignee filed his bill in this, the circuit court of the United States, against Kull and others, charging that the deed of November, 1867, and the distraining process afterwards instituted by Kull & Sons, were fraudulent transactions as between the bankrupt and Kull & Sons, and praying that the deed of the house and lot be set aside, and that Kull & Sons be made to account for the goods taken by them under their process of distress. On the 27th of April, 1875, during the pendency of this suit, Eli Kull sold the house and lot in Petersburg to Max Cohen. Cohen, on the 27th of October, 1876, filed his petition in this court, in this suit of The Assignee v. Kull and others, praying that he might be made a party defendant. which was done. and alleging that the said house and lot had been sold to him at public auction, after due advertisement; and publicly purchased by him in good faith and for full value, and without notice, direct or indirect, in any manner whatever. of the pendency of this suit. or of any suit in respect to the house and lot in question. or of any defect in Kull's title to the property; and alleging also, that no memorandum of lis pendens had been recorded by the complainant in this suit so as to affect him with constructive notice thereof. He claimed that, as a purchaser in good faith for full value. without notice, and in the absence of the docketing of a lis pendens as required by the Code of Virginia. he is not bound by the proceedings in this court, and ought to be protected in his title by the court, and prays relief or remedy. The deed of Wolf to Eli Kull was, in due course, pronounced fraudulent, null. and void, and was annulled and released.